OPINION
{¶ 1} Appellants, Royce and Mary Carpenter, appeal the judgment entered by the Lake County Court of Common Pleas. The trial court entered summary judgment in favor of Appellee, Western Reserve Group.
 {¶ 2} In its judgment entry, the trial court noted that Western Reserve Group does business as Western Reserve Mutual Casualty Company and Lightning Rod Mutual Insurance Company. All three entities were named in the original complaint. However, the trial court treated all three as one entity, Western Reserve Group. On appeal, appellee has submitted a brief identifying itself only as Western Reserve Group. Thus, for the purposes of this appeal, we will refer to Western Reserve Group, collectively, as appellee.
 {¶ 3} In September 1999, appellants were injured when an automobile, in which they were passengers, was involved in an accident. This vehicle was owned and operated by James Deaner. Deaner's vehicle collided with a vehicle driven by Kathryn Sutton. The complaint alleges that the accident was due to Sutton's negligence.
 {¶ 4} At the time of the accident, appellants had underinsured motorist coverage ("UIM") through appellee. The policy limits of the policy with appellee were $100,000 per person, $300,000 per accident. Deaner had UIM coverage through Farmers Insurance Company. The policy limits of this policy were also $100,000 per person, $300,000 per accident. Finally, Sutton, the alleged tortfeasor, had insurance coverage through Progressive Insurance Company. The policy limits on this policy were $25,000 per person, $50,000 per accident.
 {¶ 5} Appellants settled with Progressive for $25,000 each, the policy limit. Thereafter, they settled with Farmers for $75,000 each under that policy's UIM coverage. Thus, both appellants received $100,000 for their injuries.
 {¶ 6} After settling with the other insurance companies, appellants sought additional coverage under appellee's UIM coverage. Appellants filed the instant action, claiming they were entitled to $75,000 each under appellee's UIM coverage. Appellee filed an answer and counter-claim for declaratory judgment, wherein it asserted that it was entitled to a $100,000 setoff for payments appellants received on behalf of other insurance companies.
 {¶ 7} Appellee filed a motion for summary judgment. The crux of this motion for summary judgment was that the $25,000 appellants each received under the tortfeasor's policy and the $75,000 they each received under the Farmers' policy should both be set off against potential coverage under appellee's UIM coverage. The trial court granted appellee's motion for summary judgment.
 {¶ 8} Appellants raise a single assignment of error:
 {¶ 9} "The trial court erred to the prejudice of plaintiff-appellant [sic] in granting [appellee's] motion for summary judgment."
 {¶ 10} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] In addition, it must appear from the evidence or stipulations that reasonable minds can come to only one conclusion, which is adverse to the non-moving party.[2]
The standard of review for the granting of a motion for summary judgment is de novo.[3]
 {¶ 11} The contract language in the policy is:
 {¶ 12} "Except with respect to coverage under Section 2. of the definition of `uninsured motor vehicle', any amounts otherwise payable for damages under this coverage shall be reduced by all sums paid because of `bodily injury' by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.
 {¶ 13} "With respect to coverage under Section 2. of the definition of `uninsured motor vehicle', the limit of liability shall be reduced by all sums paid because of `bodily injury' by or on behalf of persons or organizations who may be legally responsible such that the total amount owed by under [sic.] this provision of policy is no greater than what could be recovered from the owner or operator of a vehicle carrying liability limits equal to the limits specified in this portion of your policy."
 {¶ 14} In addition, regarding other insurance, the policy provides:
 {¶ 15} "If there is other applicable similar insurance available under more than one policy or provision of coverage:
 {¶ 16} "1. Any recovery for damages for `bodily injury' sustained by an `insured' may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.
 {¶ 17} "2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.
 {¶ 18} "3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits."
 {¶ 19} The Supreme Court of Ohio has addressed what amounts should be set off against potential UIM coverage, stating:
 {¶ 20} "For the purpose of setoff, the `amounts available for payment' language under R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier)."[4]
 {¶ 21} Appellants had received a total of $100,000 each from the other insurance companies. Therefore, this amount was required to be set off against the amount appellee owed under the UIM section of the policy. Since this amount was equal to the amount available under the policy with appellee, there was a complete setoff, and appellee was not required to provide any money to appellants under the UIM coverage.
 {¶ 22} This court considered a nearly identical situation inKovatch v. Aetna Cas. Sur. Co.[5] In Kovatch, a woman was riding in an automobile owned and operated by her daughter. An accident occurred with another vehicle. The woman and her daughter had separate insurance policies through different companies. The woman's insurance policy provided UIM coverage of $50,000 per person and $100,000 per accident. Her daughter's insurance policy also provided coverage of $50,000/100,000.[6] The woman received $25,000, the policy limit, from the tortfeasor's insurance company. Thereafter, she sought coverage through both her own and her daughter's insurance policies. Her daughter's insurance company paid her $25,000 to settle the action. The issue before this court was whether the woman was entitled to an additional $25,000 of UIM coverage under her own policy.[7]
 {¶ 23} This court found that the woman was not entitled to additional coverage from her own insurance company. We refer to the following language, as it is extremely applicable to the case at bar:
 {¶ 24} "UIM coverage is defined as providing protection to an insured where the limits of coverage available for payment to the insured under all bodily injury insurance policies covering persons liable to the insured are less than the limits of the insured's UIM coverage. UIM coverage is not excess insurance. It is only provided to afford the insured protection which is not greater than that which is available under the insured's UIM coverage. The policy limits of UIM coverage are to be reduced by those amounts available for payment under all applicable bodily injury insurance policies covering persons liable to the insured.
 {¶ 25} "Appellant contends that the phrase `persons liable to the insured' refers only to the tortfeasor. From appellant's perspective, therefore, only the $25,000 from [the tortfeasor's] policy with State Farm should be offset against the limits of her UIM coverage with Progressive. In other words, the $25,000 paid by Aetna should not be offset because [her daughter] was not a person who was `liable' to appellant.
 {¶ 26} "As an initial observation, it should be noted that if this court were to accept appellant's position, it would amount to the stacking of the UIM coverage provided for by the Aetna and Progressive policies. In essence, appellant is attempting to recover UIM benefits under her policy with Progressive on top of and in addition to the UIM benefits she has already garnered from her daughter's policy with Aetna. As will be discussed infra,
appellant's policy with Progressive contains an anti-stacking clause which expressly prohibits this type of recovery.
 {¶ 27} "Beyond this, we disagree with appellant's interpretation of R.C. 3937.18(A)(2). The statute manifests a clear intent on the part of the General Assembly to limit the amount of UIM benefits to that which is available under the insured's policy."[8]
 {¶ 28} Appellants assert that the instant matter is distinguishable from Kovatch because of the difference in the policy language. The policy language regarding other insurance from the policy at issue in Kovatch was:
 {¶ 29} "`B. Subject to the above, if an insured person is injured while occupying any other vehicle and other similar coverage not provided by us applies, coverage under this Part IV applies:
 {¶ 30} "`1. as excess to any similar coverage with applies to the vehicle as primary coverage; but
 {¶ 31} "`2. only in the amount by which the Limit of Liability for this Part IV exceeds the primary coverage.'"[9]
 {¶ 32} Appellants claim the policy at issue in this case, unlike the language from the policy in Kovatch, does not limit stacking and "speaks of actually covering its proportionate share of the loss." We disagree. The "proportion" language specifically mentions that appellees' "share of the loss" is subject to the limit of liability. The limit of liability section precludes stacking by limiting recovery to that which would have been received under another insurance policy with equal limits.
 {¶ 33} In addition, we note that the Kovatch decision focused on the term "liable" from R.C. 3937.18(A)(2). In the case sub judice, the policy language stated that coverage would be reduced by amounts paid on behalf of persons or organizations "who may be legally responsible." In a dissenting opinion, Justice Cook observed the following, "Black's Law Dictionary definitions of `liable' and `liability' demonstrate that the concept is broadly defined to encompass both the ultimate legal responsibility for an act and the potential of being held legallyresponsible for an act."[10] This court has held that the term "liable" as used in R.C. 3937.18(A)(2), includes contractual as well as tort liability.[11] The fact that the policy language referenced possible "legal responsibility" rather than "liability" was not fatal to the stacking preclusion.
 {¶ 34} Appellants are not entitled to additional coverage through appellee. Appellants contracted with appellee for $100,000/300,000 insurance coverage. They are not entitled to receive additional compensation by means of stacking UIM coverage from multiple insurance policies.
 {¶ 35} The trial court did not err by granting appellee's motion for summary judgment. Appellants' assignment of error is without merit.
 {¶ 36} The judgment of the trial court is affirmed.
Judgment affirmed.
Ford, P.J., and Rice, J., concur.
[1] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[2] Civ.R. 56(C).
[3] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105.
[4] Clark v. Scarpelli (2001), 91 Ohio St.3d 271, syllabus;Littrell v. Wigglesworth (2001), 91 Ohio St.3d 425, syllabus.
[5] Kovatch v. Aetna Cas. Sur. Co. (Sept. 24, 1999), 11th Dist. No. 98-L-095, 1998 WL 778381.
[6] Id. at *1.
[7] Id.
[8] Id. at *3.
[9] Id. at *4.
[10] (Emphasis in original.) Fidelholtz v. Peller (1998),81 Ohio St.3d 197, 204 (Cook, J., dissenting), citing Black's Law Dictionary (6 Ed. 1990) 914, 915.
[11] Kovatch, at *4.